**Marilyn HOLLISTER, Plaintiff–Appellant,**

v.

**John FORSYTHE, a public officer; Rosebud County, a Montana Political Subdivision, Defendants–Appellees.**

No. 92–36649.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1994.

Decided April 26, 1994.

Ken D. Peterson, Peterson, Schofield & Leckie, Billings, MT, for plaintiff-appellant.

K. Kent Koolen, Moulton, Bellingham, Longo & Mather; Rodney T. Hartman, Herndon, Hartman, Sweeney & Halverson; Sharon Novak, Steven J. Lehman, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, MT, for defendants-appellees.

Before: CANBY, and T.G. NELSON, Circuit Judges, and SHUBB,* District Judge.

Opinion by Judge CANBY.

* The Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation.

CANBY, Circuit Judge.

Marilyn Hollister appeals the district court's grant of summary judgment in favor of defendants John Forsythe and Rosebud County on her claim under 42 U.S.C. § 1983 alleging that she was dismissed from her secretarial job in violation of her constitutional right to due process. Because under Montana law she had no property interest in the job, and hence there was no constitutional violation, we affirm.

## BACKGROUND

On November 30, 1990, Rosebud County Attorney John Forsythe (appellee) advised Hollister that her employment as a legal secretary in his office—a job she had held for approximately ten years—would be terminated effective Friday, January 4, 1991. He gave no reasons for the decision. In response, Hollister contacted the Rosebud County Board of Commissioners, which advised her to report to work on Monday, January 7, despite her purported discharge. Hollister arrived at work, but Forsythe asked her to leave, refusing to discuss the firing. When Hollister said she would not leave without something in writing, Forsythe instructed his secretary to type a letter saying only, "Please leave the office immediately."

Hollister left, and the same day lodged a letter with the County Commissioner's Office, requesting a grievance hearing pursuant to procedures outlined in the County Personnel Policy. The County Board held a hearing the following day, evidently without inviting Hollister to attend, and suggested to Forsythe that he retain Hollister at least until he could document his reasons for firing her. He refused, however, and the Board, which had no authority to order Hollister's reinstatement, took no other action.

Thereafter, Hollister brought this action in district court, alleging violation of her Fourteenth Amendment rights to procedural and substantive due process, violation of several provisions of the Montana Constitution, wrongful discharge in violation of Mont.Code Ann. § 39–2–901 *et seq.*, breach of an implied covenant of good faith and fair dealing, and defamation. The district court granted summary judgment for Forsythe on Hollister's due process claims, holding that under Montana law she had no property interest in continued employment, and hence that Forsythe's actions could not have violated her rights under the Fourteenth Amendment. It then dismissed Hollister's state claims without prejudice, declining to retain supplemental jurisdiction. This appeal followed.

## DISCUSSION

■ To show that her constitutional rights were violated, Hollister must demonstrate that she had a property interest in continued employment under Montana law. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). We review *de novo* a district court's interpretation of state law. *Wheaton v. Webb Petett,* 931 F.2d 613, 616 (9th Cir.1991).

### I

■ Hollister relies on the Rosebud County Personnel Policy as the primary source of her putative property right. She points out that the policy: (a) provided that she could only be dismissed for "just cause," (b) required that she be afforded an opportunity for a post-termination hearing if she believed she was improperly dismissed, and (c) made mandatory her participation in an employee retirement program.

In some states such expressions can give rise to a property right in continued employment. For instance, in *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), an ordinance provided that the plaintiff could not be fired except:

"for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office."

470 U.S. at 539 n. 4, 105 S.Ct. at 1491 n. 4. The Court found that this "for cause" language gave the plaintiff a property interest

in his job under Ohio law. *Id.* at 538–39, 105 S.Ct. at 1491–92. *See also Walker v. City of Berkeley,* 951 F.2d 182, 183 (9th Cir.1991) (applying California law).

It was not, however, the "for cause" language in the ordinance, standing alone, that created the property right recognized by the Court in *Loudermill.* Rather, it was this language interpreted in the light of Ohio law. To see this point, one need only compare *Loudermill* with *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In *Bishop,* the Supreme Court found that an ordinance employing similar language[1] conferred no protectable property interest because, despite the "for cause" language, under North Carolina law a property right to a job could be created only by a statute or contract that actually made such a guarantee. *Bishop,* 426 U.S. at 345, 96 S.Ct. at 2077–78.[2]

█ In Montana, the employment-at-will statute, Mont.Code Ann. § 39–2–503, governs what must be done to create a property interest in continued employment. *Medicine Horse v. Big Horn County Sch. Dist.,* 251 Mont. 65, 823 P.2d 230, 233–34 (1991); *Reiter v. Yellowstone County,* 192 Mont. 194, 627 P.2d 845, 849 (1981). The statute provides, in relevant part, that, "[A]n employment having no specified term may be terminated at the will of either party on notice to the other . . . ." Mont.Code Ann. § 39–2–503. The Montana Supreme Court has construed this provision to mean that, absent a specified term of employment, contained in a rule, regulation, state law, or understanding between employer and employee, an employee in Montana is an employee at will and has no property interest in his job. *See Medicine*

*Horse,* 823 P.2d at 233–34; *Reiter,* 627 P.2d at 849.

The difficulty with Hollister's position is that the Rosebud County Personnel Policy specifies no term of employment. Neither is there a statute specifying a term of employment that would apply to her position, nor had she a written contract specifying a term of employment. Therefore, Hollister was an at-will employee who had no protectable property interest in her job.

Hollister insists that, despite the at-will employment statute and despite the decisions in *Medicine Horse* and *Reiter,* the provisions of the Rosebud County Personnel Policy she points to are "indicia of property interests" creating a right to continued employment. We are not persuaded. In *Gates v. Life of Montana Ins. Co.,* 196 Mont. 178, 638 P.2d 1063, 1067 (1983), the Montana Supreme Court had held that an employment handbook that assured employees of a pre-termination hearing gave rise to an implied covenant of good faith and fair dealing. *Dare v. Montana Petroleum Marketing Co.,* 212 Mont. 274, 687 P.2d 1015 (1984), extended *Gates,* holding that such a covenant could be implied, even absent a writing, from an employer's behavior giving rise to an employee's reasonable belief that they could only be fired for good cause—a belief that "their job is secure so long as they perform their duties satisfactorily." *Dare,* 687 P.2d at 1020. The court continued:

> The presence of such facts [giving rise to the covenant] indicates that the term of employment has gone beyond the indefinite period contemplated in the at will employment statute, section 39–2–503,

---

1. The ordinance at issue in *Bishop v. Wood* stated:

   > If a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient or unfit to perform his duties, he may be dismissed by the City Manager.

   *Bishop,* 426 U.S. at 344 n. 5, 96 S.Ct. at 2077 n. 5.

2. There is a second difference between the *Bishop* ordinance and the one at issue in *Loudermill* that may be relevant. The *Loudermill* ordinance stated that the grounds enumerated were the *only* grounds on which an employee could be

removed; no similar statement is found in the *Bishop* ordinance. Thus, it may be noteworthy that the parallel provision in the Rosebud County Personnel Policy on which Hollister relies uses permissive language more closely resembling that found in the *Bishop* ordinance than the more restrictive language found in the *Loudermill* ordinance:

> The department official may dismiss a permanent employee for just cause. A written evaluation of the employee's work record will be made. A written notice of the action will be given to the employee, to the Board of County Commissioners and to the Public Safety Commission, where applicable.

MCA, and is founded upon some more secure and objective basis.... Implication of the covenant depends upon existence of objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly.

*Id.* This implication, however, does not mean that under Montana law the employee has attained a property right in continued employment:

> We must not confuse the "term of employment" [in Mont.Code Ann. § 39–2–503] with the right of the employee to be dealt with fairly and in good faith. The breach of the obligation owed by the employer may give rise to a tort action on the part of the employee, but does not convert "at will" employment to employment for a specific term.

*Id.* at 1022 (Gulbrandson, J., concurring); *see also Crenshaw v. Bozeman Deaconess Hosp.,* 213 Mont. 488, 693 P.2d 487, 492 (1984):

> [The] requirement of good faith and fair dealing does not conflict with section 39–2–503.... Employers can still terminate untenured employees at will and without notice. They simply may not do so in bad faith or unfairly without becoming liable for damages.

The "indicia of property interests" that Hollister alludes to—such as the "for cause" provision in the County Personnel Policy, her right to a post-termination hearing, and so forth—are precisely the kinds of provisions that *Gates, Dare,* and *Crenshaw* ruled may create an implied covenant of good faith and fair dealing, but that nonetheless do not turn an at-will employee into an employee with a property right in her job.

The Montana Supreme Court's treatment of Mont.Code Ann. § 39–2–503 in light of the subsequently enacted Wrongful Discharge From Employment Act, Mont.Code Ann.

§§ 39–2–901 *et seq.,* is consistent with this conclusion. The Act provides, inter alia, that an at-will employee who is discharged without "good cause," is entitled to certain remedies, including lost wages and benefits up to a specified limit. Mont.Code Ann. §§ 39–2–903(5), 39–2–904(2), 39–2–905(1). Nonetheless, the Act does not abrogate the provisions of the at-will employment statute, and does not create in at-will employees a property interest in their jobs. *See Scott v. Eagle Watch Investments, Inc.,* 251 Mont. 191, 828 P.2d 1346, 1349 (1991); *Medicine Horse,* 823 P.2d at 232.

We see no reason why the rationale underlying these decisions should not apply to the provisions of the Rosebud County Personnel Policy on which Hollister relies.[3] In Montana, as was the case in North Carolina in *Bishop,* "for cause," and similar provisions in employment contracts, handbooks, or statutes, that fall short of an explicit agreement as to a term of employment do not give an employee a property interest in her job. Montana law does not permit us to read "just cause," hearing, or mandatory retirement plan provisions in the County Personnel Policy as implying specified term of employment. *See Reiter,* 627 P.2d at 849:

> [I]t would be a contradiction in terms to say that [the plaintiff] had an "implied specified" period of employment. A specified term is one which the parties expressed.... Section 39–2–503 operates to fill the gap left by the parties by defining the relationship as an "at-will" employment. While the rule may well be outdated, it is uniquely a province of the legislature to change it.

The provisions of the County Personnel Policy, taken individually or together, do not amount to an "expression ... concerning the length of employment."

---

**3.** Hollister contends that the fact that the Wrongful Discharge From Employment Act does not apply to actions arising under federal law somehow ought to affect our analysis. *See* Mont.Code Ann. 39–2–912(1). We disagree. It is Montana's at-will employment statute, Mont.Code Ann. 39–2–503, that determines whether Hollister had a property right in continued employment. The Wrongful Discharge From Employment Act is relevant only by analogy. The Montana Supreme Court has held that the Act, which provides remedies for employees discharged without good cause, does not abrogate the effect of Mont. Code Ann. 39–2–503. *Crenshaw,* 693 P.2d at 492. This holding suggests, by analogy, that the "for cause" provisions in the Rosebud County Personal Policy did not alter Hollister's status as an at-will employee.

## II

 Hollister suggests that even if the "just cause" and post-termination hearing provisions of the personnel policy do not give rise to a property interest, other "understandings" and "manifestations of permanency" do.[4] *See Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972):

> A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.... [A]bsence of ... an explicit contractual provision may not always foreclose the possibility [of] a property interest in [continued employment].

In light of *Dare* and *Crenshaw,* however, these "manifestations of permanency" and "understandings" might give rise to an implied covenant of good faith and fair dealing that may be actionable in contract,[5] but they do not give rise to a property interest absent the "specified term of employment" required by Mont.Code Ann. § 39-2-503. Even Hollister's status as a "permanent" employee does not indicate that she had a specified term of employment. *See Medicine Horse,* 823 P.2d at 233-34 ("Medicine Horse would have this court equate the 'permanency' of employment that comes with the passing of a probationary period with a property interest in one's employment. Both this court and the United States Supreme Court have rejected this argument.").

## CONCLUSION

Because Hollister did not have a property interest in her continued employment, Forsythe could not have violated her Fourteenth Amendment due process rights when he fired her. Accordingly, the district court properly granted summary judgment on Forsythe's federal claim. With no other federal claims pending, it was within the district court's discretion not to entertain the supplemental state law claims. The judgment of the district court is AFFIRMED.

AFFIRMED.

---

4. For example, she notes Forsythe's own office policies: (a) required that secretaries should be hired on the basis of their ability and (b) established "career ladders and programs for retention."

5. *See, e.g., Beasley v. Semitool, Inc.,* 258 Mont. 258, 853 P.2d 84, 87 (1993).